UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
YING LIN (A # 077-281-342),

                Plaintiff,

        - against -

U.S. DEPARTMENT OF HOMELAND
SECURITY; JEH JOHNSON, in his official
capacity as Secretary; U.S. CITIZENSHIP
AND IMMIGRATION SERVICES; LEON
RODRIGUEZ, in his official capacity as
Director; PHYLLIS COVEN, in her official
capacity as Director of the New York District
Office,

                Defendants.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
15-CV-5588 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Ying Lin, a Chinese citizen, brings this action under the Administrative Procedure Act ("APA"), requesting that the Court review the U.S. Citizenship and Immigration Services's ("USCIS") denial of Plaintiff's application to adjust her status to that of lawful permanent resident, and order USCIS to grant her application. Defendants have moved to dismiss the action under Federal Rule of Civil Procedure ("FRCP") 12(b)(1) for lack of subject-matter jurisdiction, and alternatively under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted. Because the Court lacks subject matter jurisdiction over this action, Defendants' motion to dismiss under FRCP 12(b)(1) is GRANTED.

# BACKGROUND

## I. FACTUAL BACKGROUND

### A. Plaintiff's Initial Entry into the United States

On October 30, 1999, Plaintiff sought admission into the United States at Honolulu International Airport, using a fraudulent U.S. passport with the name "Siu Ling Wong." (R246, R248–56.[1]) Immigration officers confiscated the passport and questioned Plaintiff, who gave a sworn statement. (R248–256.) When asked if she was making a claim to U.S. citizenship, she answered, "Yes, I used a US passport so I am claiming to be a US citizen," and when asked if her name was Siu Ling Wong, she answered, "I don't know." (R 249.)

### B. Plaintiff's Removal Proceedings and Appeal

Plaintiff was charged with inadmissibility, pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(C)(i) (fraud) and INA § 212(a)(7)A)(i)(1) (entering without proper documentation), and was issued a Notice to Appear ("NTA") before a New York Immigration Court. (R 246.) At a hearing before an immigration judge ("IJ") on December 28, 1999, the IJ granted Plaintiff leave to file an application for asylum. (R 177–80; Dkt. 9, at 3.) After further proceedings, in which Plaintiff requested asylum based on having been required to appear for physical exams, and as well as on the basis of her Christian faith, she ultimately withdrew her asylum application. (R 9; 212–14; 22–23.) The IJ granted Plaintiff until March 13, 2001 to obtain documents for a voluntary departure, and ordered her to appear in Immigration Court for a removal proceeding on the morning of March 13, 2001. (R 225.)

---

[1] "R" refers to the Administrative Record submitted by Defendants. (Dkt. 11.)

When Plaintiff failed to appear at her removal proceeding on March 13, 2001, the Immigration Judge ordered her removed *in abstentia*. (R 175, R 228–29.) Pursuant to 8 C.F.R. § 1241.1(e), the IJ's order constitutes a final order of removal.

Plaintiff filed a *pro se* appeal of the removal order with the Board of Immigration Appeals ("BIA"), but the BIA dismissed it on November 4, 2002, holding that the BIA was precluded from considering an appeal of a removable order entered after the respondent failed to appear in Immigration Court. (R 233.)

### C. Plaintiff's Attempts to Adjust Her Immigration Status

#### 1. Plaintiff's Application for Adjustment-of-Status

On April 11, 2001, Plaintiff married Mao Fan Lin, a U.S. citizen. (R 28.) The same month, Plaintiff filed an I–485 Application to Register Permanent Resident or Adjust Status ("Adjustment-of-Status Application"). (R 167–74.) In her Adjustment-of-Status Application, Plaintiff responded "no" to the question, "[h]ave you, by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the U.S. or any immigration benefit?" (R 169.)

On June 27, 2002, Mr. Lin filed a Form I-130 Petition for Alien Relative on behalf of Plaintiff. (R 360.) On October 17, 2002, USCIS approved the petition. (R 360.) On July 12, 2006, Plaintiff filed or re-filed an Adjustment-of-Status Application. (R 163.)[2]

#### 2. USCIS's Denial of Plaintiff's Application and Plaintiff's Appeals

USCIS denied Plaintiff's Adjustment-of-Status Application on August 5, 2008, finding that she was statutorily ineligible for adjustment of status due to inadmissibility, pursuant to INA § 212(a)(6)(C)(ii) (false claim of United States citizenship). (R 163–64.) On August 12, 2008,

---

[2] It is not clear whether this was a reopening of the 2001 application or a new one.

Plaintiff filed a motion to reconsider the denial of her Adjustment-of-Status Application. (R 145, 158–62.) On June 5, 2013, USCIS adjudicated and denied Plaintiff's motion. (R 144–46.) The decision affirmed the previous decision stating that Plaintiff was ineligible for an adjustment of status because of her false claims of U.S. citizenship, citing INA § 212(a)(6)(C)(ii). (R 144–46.)[3]

On March 28, 2014, Plaintiff filed a second action in the United States District Court for the Eastern District of New York, pursuant to the APA, challenging the USCIS's June 5, 2013 decision denying reconsideration of its denial of Plaintiff's Adjustment-of-Status Application. (R 135–43.) On or about April 24, 2014, the action was dismissed by stipulation of the parties, by which the parties agreed that the June 5, 2013 decision would be vacated and the matter would be remanded to USCIS. (R 130–32.)

### 3. The August 2014 Decision

On or about June 14, 2014, USCIS reopened Plaintiff's Adjustment-of-Status Application for reexamination. (R 124.) On August 22, 2014, USCIS denied Plaintiff's application "as a matter of law," because she had attempted to use a fraudulent passport to enter the U.S. and had made a false statement on the Adjustment-of-Status Application itself. (R 8–12.) It found that Plaintiff was therefore inadmissible under INA § 212(a)(6)(C)(i). (*Id.*) USCIS held in the alternative that Plaintiff's Adjustment-of-Status Application should be denied as a matter of discretion, noting several adverse factors, including Plaintiff's attempt to enter the country with "full knowledge" that she was using a fraudulent passport, her willful completion of a Customs

---

[3] Prior to USCIS's adjudication of Plaintiff's motion to reconsider, she filed an action in the United States District Court for the Eastern District of New York to compel USCIS to timely adjudicate her motion. (R 149–155.) When USCIS adjudicated and denied Plaintiff's motion, the district court dismissed the action by stipulation of the parties. (R 147–48.)

4

Declaration Card declaring U.S. citizenship, and her deliberate and willful failure to appear in Immigration Court on March 3, 2001, as ordered by the IJ. (R 11.)

4. The March 2015 Decision

On September 19, 2014, Plaintiff moved to reopen and reconsider the August 2014 Decision denying her Adjustment-of-Status Application. (R 1.) On March 18, 2015, USCIS denied her motion to reconsider, affirming its August 22, 2014 denial for the same reasons as those articulated in the August 2014 denial. (R 1–3.)

## II. PROCEDURAL HISTORY

On September 28, 2015, Plaintiff brought the instant action challenging USCIS's legal determination of inadmissibility. (Dkt. 1.) Pending before the Court is Defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim.

## DISCUSSION

### I. THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER THIS ACTION

#### A. The REAL ID Act of 2005

"[A] petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal. . . ." 8 U.S.C. § 1252(a)(5) ("Section 1252(a)(5)"). *See also Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 113 ("The REAL ID Act amended the [INA] to provide that petitions for review filed in the appropriate Courts of Appeals were to be the 'sole and exclusive means for judicial review' of final orders of removal." (quoting Section 1252(a)(5))).

In 2011, the Second Circuit held that the Section 1252(a)(5) bar precludes district courts from reviewing both direct and *indirect* challenges to removal orders. *Delgado v. Quarantillo*, 643 F.3d 52, 53 (2d Cir. 2011). In *Delgado*, the plaintiff attempted to enter the United States using

5

false identification, and was removed. *Id.* She thereafter re-entered unlawfully and filed multiple forms seeking lawful permanent resident status, including a Form I–212 for permission to reapply for admission, and an Adjustment-of-Status Application. *Id.* at 53–54. USCIS denied the plaintiff's Form I–212, stating that she was ineligible to seek admission because she had not applied for permission to reenter before reentering unlawfully, and denied her Adjustment-of-Status Application because her inadmissibility could not be waived. *Id.* at 54. After the Second Circuit upheld the reinstated order, plaintiff brought a mandamus action to compel USCIS to make a determination on the merits of her I–212 application, arguing that USCIS had violated the APA and her constitutional rights in denying her application. *Id.*

The Second Circuit affirmed the district court's dismissal for lack of subject matter jurisdiction, holding that plaintiff was "indirectly challenging her reinstated order of removal, and . . . that section 1252(a)(5)'s jurisdictional bar applies equally to preclude such an indirect challenge." *Id.* at 55. The Court held that "an 'adjustment-of-status challenge is inextricably linked to the reinstatement of [an alien's] removal order' because 'a nunc pro tunc Form I–212 waiver of inadmissibility and the adjustment of status to that of [a lawful permanent resident]' would render the reinstatement order 'invalid.'" *Id.* (quoting *Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1082–83 (9th Cir. 2010)).[4] *See also Xiao Cong Hu v. Holder*, 11-CV-4747, 2012 WL 2619185, at *1 (E.D.N.Y. June 25, 2012) (same).

---

[4] Plaintiff, without elaboration, seeks to distinguish *Delgado* on the basis of the *Delgado* Court's statement that "whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking." *Delgado*, 643 F.3d at 55. As examples of relief that would not be considered indirect challenges to removal orders, the *Delgado* court pointed to review of a denial of an I–130 petition (for classification of an alien as an immediate relative of a U.S. citizen) and a challenge to the constitutionality of an arrest and detention, not an underlying administrative order of removal. *See id.* at 55, and n.3. *Delgado* thus distinguished situations where the relief sought was "unrelated to any removal action or proceeding." *Id.* at n.3. Plaintiff does not explain how the relief she is seeking—that the Court set aside USCIS's denial of her I-485 Application

6

Following *Delgado*, courts routinely dismiss cases where the requested relief would lead, or be a prerequisite, to invalidation of a removal order, including where the requested relief is action involving an adjustment-of-status application. *See Singh v. USCIS*, 15-CV-1411, 2016 WL 1267796, at *5 (S.D.N.Y. March 30, 2016) (dismissing for lack of jurisdiction where plaintiff's requested relief was a remand to USCIS to adjudicate his adjustment-of-status application after USCIS had determined that only the IJ had jurisdiction to do so, stating that "the 'substance of the relief' [the plaintiff] seeks necessarily impugns the validity of the underlying order of removal and is thus 'inextricably linked' to it . . . ."), *appeal docketed*, 16-1729 (2d Cir. May 31, 2016); *Ferdous v. Johnson*, 15-CV-0122, 2015 WL 9581815, at *4 (E.D.N.Y. Dec. 30, 2015) (finding that motion requesting that the Court "compel [d]efendants to consent to [plaintiff's] motion to reopen his removal proceeding to allow him to file an approved application for adjustment of status" was relief that was "inextricably linked with [plaintiff's] underlying order of removal," because "the effect of [plaintiffs'] requested relief would be to 'render [plaintiff's] removal order 'invalid'"); *Bici v. Napolitano*, 3:10-CV-1991, 2012 WL 642781, at *2 (D. Conn. Feb. 28, 2012) (finding that "the court does not have jurisdiction to consider the plaintiff's request for an order directing the defendants to grant his application to reapply for admission into the United States" under *Delgado*); *Rodriguez v. Andren*, 11-CV-274, 2011 WL 6818493, at *3 (N.D.N.Y. Nov. 29, 2011) (dismissing for lack of subject matter jurisdiction plaintiff's claim that defendant immigration agent violated his constitutional rights by lodging a detainer order and deporting him, explaining

---

and order USCIS to grant it, thus adjusting her status to lawful permanent resident—is "unrelated" to her removal action, in light of the clear holding of *Delgado* and its progeny that "an "adjustment-of-status challenge is inextricably linked to the reinstatement of [an alien's] removal order." *Id.* at 55. To the extent that Plaintiff has abandoned her request for mandamus relief and only requests a declaratory judgment that USCIS's legal determination was invalid, the Court does not have subject matter jurisdiction because the Declaratory Judgment Act is not an independent source of jurisdiction. *See infra* note 8 and accompanying text.

7

that "to the extent that [plaintiff] is challenging any of his prior removal orders on any legal bases, including the constitution, or the actions, factual findings, or ultimate decisions of the immigration judge, such challenges are inappropriately made in this court" because of the REAL ID Act of 2005), *report and recommendation adopted*, No. 11-CV-274, 2011 WL 6817974 (N.D.N.Y. Dec. 28, 2011); *Nieto-Ayala v. Holder*, 08-Civ.-8347, 2011 WL 3918156, at *3 (S.D.N.Y. Aug. 30, 2011) (holding that court did not have jurisdiction to compel the government to allow the plaintiff to remain on parole until USCIS adjudicated his asylum application, because if it granted the requested relief, "the Government would be without a mechanism to enforce the removal order until USCIS has adjudicated [plaintiff's] asylum application"); *see also Qiao v. Lynch*, 16-CV-321, 2017 WL 129934, at *1 (2d Cir. Jan. 13, 2017) (affirming district court's dismissal for lack of subject-matter jurisdiction over plaintiff's action challenging the reopening of his removal proceedings based on evidence that he had returned to China after being granted asylum, in part because "any review of reopening would require consideration of the merits of [plaintiff's] eligibility for removal").

### B. Under the REAL ID Act of 2005, the Court Does Not Have Subject Matter Jurisdiction over Plaintiff's Claims

#### 1. *Delgado* Dictates a Finding of No Subject Matter Jurisdiction

Plaintiff's request that the Court hold unlawful and set aside USCIS's denial of her Adjustment-of-Status Application and order USCIS to grant her application falls squarely within the *Delgado* line of cases. The district court thus has no jurisdiction to address a request for relief that is "inextricably linked" to Plaintiff's order of removal. *Delgado*, 643 F.3d at 55. In fact, Plaintiff challenges her removal order far more directly than many of the plaintiffs in the *Delgado*

8

line of cases—she objects to the merits of her removal order and adjustment-of-status determination by challenging the factual and/or legal bases for those determinations.[5]

Plaintiff argues that the instant action "is not a *per se* challenge to her removal order," explaining that, even if this Court were to overturn USCIS's fraud determination, "Defendants could . . . still deny her application for adjustment of status in an exercise of discretion." (Dkt. 10, at 8–9.) Yet *Delgado* directly rejected an almost identical argument. The *Delgado* court "reject[ed] [plaintiff's] contention that she [was] not challenging the order of removal against her because, even if USCIS were to grant her an I–212 waiver, [it] would not per se prevent her removal [because the form only granted permission to reapply for admission]." *Id.* (internal quotation omitted). The Court explained that "[o]btaining such a waiver is a necessary prerequisite to her ultimate goal of adjustment of status." *Delgado*, 643 F.3d at 55.[6] Here, there is no question that an order invalidating the finding of fraud that was the basis of Plaintiff's removal constitutes a "prerequisite to [Plaintiff's] ultimate goal of adjustment of status," notwithstanding the fact that USCIS could, in its discretion, still order her removal. *Id.* Plaintiff's removal proceedings were

---

[5] It is not clear from Plaintiff's complaint or brief exactly what Plaintiff is requesting the Court to review. At different points, she argues that (i) USCIS erred in deeming her inadmissible under INA § 212(a)(6)(C)(ii) (false claim of United States citizenship) given that her NTA charges were under INA § 212(a)(6)(C)(i) (fraud); (ii) USCIS erred in its "clearly incorrect statement of law" that Plaintiff's retraction was "not relevant to the issue of misrepresentation," (Dkt. 10, at 11), and (iii) that she should not have been found guilty of fraud because she did not willfully make a false claim. All of these challenges go to the merits of the USCIS's decision, and, as discussed *infra*, overturning that decision on any of these grounds, and granting Plaintiff's requested relief of ordering USCIS to grant her Adjustment-of-Status Application, clearly would invalidate her removal order.

[6] *See also Singh*, 2016 WL 1267796, at *5 (dismissing for lack of subject matter jurisdiction where plaintiff asked the court to hold unlawful and set aside USCIS's denial of adjustment of status and remand for USCIS to adjudicate, holding that "[a]lthough USCIS's exercising jurisdiction over [plaintiff's] application might not 'per se prevent [his] removal,' it is—no less than the challenge at issue in *Delgado* and the district court cases applying *Delgado*—'a necessary prerequisite to [his] ultimate goal of adjustment of status." (quoting *Delgado*, 643 F.3d at 55)).

based on a charge that Plaintiff had presented a United States passport in the name of another person and had violated INA § 212(a)(6)(C)(i). (R 246.) USCIS's decisions to deny Plaintiff an Adjustment of Status were based on those underlying facts and on that charge. (R 2–3, 10–11, 163.)

Plaintiff's assertion that she "does not challenge her removal order" but "challenges only the legal determination . . . that she is inadmissible due to fraud," (Dkt. 10, at 8), does not create a distinction on which the Court can rely, as her removal order was based on that determination of fraud. Were the Court to address and rule that the finding of fraud was somehow incorrect, it would be "impugn[ing] the validity of the underlying order of removal and . . . thus [would be] 'inextricably linked' to it." *Singh*, 2016 WL 1267796, at *5.

Plaintiff argues that "[t]o further highlight the independent nature of [her] action, a sustained finding of inadmissibility due to fraud could potentially lead to a permanent[,] albeit waivable[,] bar from admission into the United States under any other application for which Ms. Lin may possibly pursue." (Dkt. 10, at 9.) While it is unfortunate that the effect of the underlying fraud finding could bar Plaintiff from future immigration relief, such consequences do not confer jurisdiction where there is none. The fact that denial of the requested relief would not only leave Plaintiff's removal order and denial of adjustment-of-status in place but could also bar Plaintiff from future relief does not confer jurisdiction upon the Court to entertain an indirect challenge to the former in order to preserve the option of the latter. The REAL ID Act provides that challenges to removal orders must be made in the proper court of appeals, and a district court cannot exercise

based on a charge that Plaintiff had presented a United States passport in the name of another person and had violated INA § 212(a)(6)(C)(i). (R 246.) USCIS's decisions to deny Plaintiff an Adjustment of Status were based on those underlying facts and on that charge. (R 2–3, 10–11, 163.)

Plaintiff's assertion that she "does not challenge her removal order" but "challenges only the legal determination . . . that she is inadmissible due to fraud," (Dkt. 10, at 8), does not create a distinction on which the Court can rely, as her removal order was based on that determination of fraud. Were the Court to address and rule that the finding of fraud was somehow incorrect, it would be "impugn[ing] the validity of the underlying order of removal and . . . thus [would be] 'inextricably linked' to it." *Singh*, 2016 WL 1267796, at *5.

Plaintiff argues that "[t]o further highlight the independent nature of [her] action, a sustained finding of inadmissibility due to fraud could potentially lead to a permanent[,] albeit waivable[,] bar from admission into the United States under any other application for which Ms. Lin may possibly pursue." (Dkt. 10, at 9.) While it is unfortunate that the effect of the underlying fraud finding could bar Plaintiff from future immigration relief, such consequences do not confer jurisdiction where there is none. The fact that denial of the requested relief would not only leave Plaintiff's removal order and denial of adjustment-of-status in place but could also bar Plaintiff from future relief does not confer jurisdiction upon the Court to entertain an indirect challenge to the former in order to preserve the option of the latter. The REAL ID Act provides that challenges to removal orders must be made in the proper court of appeals, and a district court cannot exercise

jurisdiction over a challenge to a removal order even if the consequences of the underlying legal determination may reach beyond removal.[7]

### 2. Plaintiff Cannot Rely on the APA or Mandamus Statute for Jurisdiction

In light of the REAL ID Act's jurisdiction-stripping provisions, Plaintiff cannot rely on either the APA or the mandamus statute to confer jurisdiction. *See Delgado*, 643 F.3d at 55–56 (rejecting plaintiff's arguments that "federal question jurisdiction exists here either because her claim arises under the APA or because she is bringing a mandamus action"). As the Second Circuit explained in *Delgado*, "[t]he APA explicitly does not apply 'to the extent that . . . statutes preclude judicial review,' . . . as the REAL ID Act [did] in this instance", and a plaintiff cannot "evade the restrictions of section 1252(a)(5) by styling her challenge as a mandamus action in order to claim jurisdiction under 28 USC § 1361."). *Id.* at 56. *See also Qiao*, 2017 WL 129934, at *1 ("Judicial

---

[7] "Ordinarily, if an action or appeal is mistakenly filed in the wrong court, the court in which the action is filed may in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." *Hu*, 2012 WL 2619185, at *1 (quoting 28 U.S.C. § 1631). Here, however, the Court cannot transfer the case to the Second Circuit Court of Appeals because Plaintiff's claim was not timely filed in *this* Court. *Id.*; *see also Meleance v. Bd. of Immigration Appeals*, 363 F. App'x 765, 767 (2d Cir. 2010) (summary order) (explaining that transfer from a district court to a court of appeals is not permitted if the petition is improperly and untimely filed in the district court). The REAL ID Act requires that a petition for review of an order of removal must be filed not later than 30 days after the date of the final order of removal. 8 U.S.C. § 1252(b)(1). In the wake of *Delgado*, it is not entirely clear whether the 30-day clock should begin at the date the removal order itself becomes final, or at the date that the challenged action (such as the denial of action involving an adjustment-of-status application) becomes final. *Compare Hu*, 2012 WL 2619185, at *1 (finding that transfer would be improper because the action was filed 16 years after the order of *removal*) and *Chen v. Johnson*, 15-CV-3422, 2016 WL 4544034, at *6, n.5 (E.D.N.Y. Aug. 30, 2016) (finding transfer improper because the plaintiff filed the action more than ten years after the enactment of the REAL ID Act, where the final order of *removal* was issued prior to the Act's enactment), *with Singh*, 2016 WL 1267796, at *6 n.5 (finding that transfer was improper because the action was filed over a year after USCIS denied plaintiff's motion for reconsideration of the denial of plaintiff's application for *adjustment of status*). The Court need not resolve this issue, because even if Plaintiff had 30 days from the final decision on her Adjustment-of-Status Application, made on March 18, 2015, Plaintiff did not file this action until September 28, 2015, more than six months later.

review of agency action is not available under the APA where such review is limited by another statute" such as the REAL ID Act); *Ferdous*, 2015 WL 9581815, at *5–6 (explaining that neither the APA nor 28 U.S.C. § 1361 conferred jurisdiction in light of Section 1252(a)(5)'s bar); *Ansah v. Napolitano*, 12-CV-5205, 2013 WL 247984, at *2 (S.D.N.Y. Jan. 23, 2013) ("[N]either the Mandamus Act nor the APA (alone or together with the federal question statute) confers jurisdiction over a case before a district court where such review is prohibited by the INA as amended by the REAL ID Act"); *Wei Chen v. Napolitano*, 12-Civ.-4620, 2012 WL 5458064, at *3 (S.D.N.Y. Nov. 8, 2012) (explaining that plaintiff's reliance on the APA was "misplaced" because the APA "explicitly does not apply 'to the extent that . . . statutes preclude judicial review,' as the REAL ID Act does in this instance") (quoting *Delgado*, 643 F.3d at 55–56)); *Bici*, 2012 WL 642781, at *2 (refusing to find jurisdiction under the APA where Section 1252(a)(5) precluded judicial review).

To the extent that Plaintiff relies upon the fact that she "seeks a declaratory judgment to resolve the charges of fraud" to provide jurisdiction, (Dkt. 10, at 10), this argument fails because the Declaratory Judgment Act ("DJA") does not provide an independent basis for jurisdiction. *See Ferdous*, 2015 WL 9581815, at *6 (rejecting plaintiff's argument that the Court had subject matter jurisdiction pursuant to the DJA, because "the DJA is 'remedial, not jurisdictional'") (quoting *Saleh v. Holder*, 84 F. Supp. 3d 135, 140 (E.D.N.Y. 2014)); *Ansah*, 2013 WL 247984, at *3 (stating that "petitioner's reliance on the Declaratory Judgment Act is misplaced because 'the Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts," and "there

must be an independent basis of jurisdiction before a district court may issue a declaratory judgment").[8]

### C. The Revised Version of 8 C.F.R. § 212.7(e) Does Not Grant the Court Jurisdiction

In supplemental filings, (Dkts. 13, 15), Plaintiff appears to argue that because the revised version of 8 C.F.R. § 212.7(e) provides a new vehicle for her to seek resident status in the future through a waiver of inadmissibility, the Court should exercise jurisdiction over the present challenge. According to Plaintiff, this new rule provides "another distinct and separate process which would be absolutely outside of the adjustment of status process and which she could use even if her final order of removal remains intact and unexecuted." (Dkt. 13, at 2.) Plaintiff requests that the Court reverse the finding of fraud so that she will be able to use the new rule in the future, which she would be ineligible for if the fraud finding were to stand. (*Id.*)[9]

This argument, however, fails for the same reason as previously discussed. The fact that the underlying factual and/or legal finding in Plaintiff's removal order and adjustment-of-status determinations might prevent her from seeking future, different relief does not give the Court

---

[8] It is not clear if Plaintiff in her response brief is seeking to abandon her requested mandamus relief, *i.e.*, that the Court order USCIS to grant her adjustment of status, and pursue *only* a declaratory judgment in an effort to avoid the repercussions of *Delgado*. If so, she runs up against the above-cited cases, which clearly hold that the DJA does not independently supply a basis of jurisdiction. If not, she continues to run into *Delgado*'s jurisdictional bar.

[9] The Court notes that in her supplemental filing, Plaintiff essentially concedes that the relief requested in her Complaint—that the Court "[o]rder USCIS to grant [Plaintiff's] [Adjustment-of-Status] Application"—would be a challenge to her removal order. *See* Dkt. 13 at 2 ("Previous to this new rule, there was no other procedural vehicle available for [Plaintiff] to directly obtain resident status except through the adjustment of status process which, if [Plaintiff] were to be successful, would then of course render her removal order void.").

jurisdiction to overturn the central finding of those proceedings, which are the subject of the instant action.[10]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint pursuant to FRCP 12(b)(1) is GRANTED. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 1, 2017
       Brooklyn, New York

---

[10] Because the Court finds that subject matter jurisdiction is barred by Section 1252(a)(5), the Court does not address the government's alternative argument that 8 U.S.C. § 1252(a)(2)(B) provides an independent basis for finding that the Court lacks subject matter jurisdiction.